IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BECKER SALTOS CHIGUANO, | : | Civil No. 1:24-CV-02210 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| CRAIG LOWE, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Petitioner Becker Saltos Chiguano's petition for writ of habeas corpus. (Doc. 1.) Following a bond hearing before this court on November 21, 2025, the court will grant the petition.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This case was initiated on December 20, 2024, by Petitioner Becker Saltos Chiguano ("Chiguano") filing a writ of habeas corpus against Respondents Craig Lowe, Brian McShane, Patrick Lechleitner, Alejandro Mayorkas, and Merrick Garland (collectively, "the Government") challenging his prolonged detention under 8 U.S.C. § 1226(c). (Doc. 1.) Chiguano, a citizen of Ecuador, entered the United States in September 2022 without inspection. (Doc. 20, pp. 1–2.)[2] The

---

[1] Because the court is writing for the benefit of the parties, the court only recites the facts necessary to rule on Chiguano's petition for writ of habeas corpus and determine whether he should be granted bond. The additional facts relevant to Chiguano's underlying immigration proceedings and conceded issues in this case are important, but not necessary, for the court's determination here.

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

1

same month, Chiguano received a notice to appear, which charged him with being removable for being present in the United States without being admitted or paroled. (*Id.* at 2.) Chiguano was released at that time. (*Id.*)

In December 2023, Chiguano had an immigration hearing where he sought deferral of removal under the Convention Against Torture ("CAT"). (*Id.* at 2–3.) On March 1, 2024, an immigration judge ("IJ") denied Chiguano's CAT application and ordered him removed. (*Id.* at 3; Docs. 30-1, 30-2.) Chiguano appealed this decision to the Bureau of Immigration Appeals ("BIA"), which affirmed the IJ's decision. (Doc. 20, p. 3.) Chiguano then petitioned the Third Circuit Court of Appeals to review his CAT denial. (*Id.*) The parties jointly motioned the Third Circuit to remand Chiguano's case to the BIA for further review, which was granted on February 5, 2025. (Doc. 29, pp. 27–37.) On September 5, 2025, the BIA remanded Chiguano's case to the IJ for a decision consistent with its opinion. (Doc. 29, pp. 39–42.) As of November 21, 2025, the IJ has not issued a decision.

While Chiguano's underlying immigration case was being litigated, on January 22, 2025, the court granted the parties joint stipulation, which ordered an individualized bond hearing before the appropriate immigration court. (Doc. 8.) On March 13, 2025, Chiguano filed a motion to enforce the order granting an individualized bond hearing. (Doc. 9.) After full briefing, on June 10, 2025, Chief

2

Magistrate Judge Bloom issued a report and recommendation wherein he recommended that the court grant Chiguano's motion to enforce and order a new bond hearing before an immigration judge. (Docs. 10, 11, 12.) This court adopted the report and recommendation, which had no objections, on June 27, 2025. (Doc. 13.) The order required that an individualized bond hearing before an immigration judge take place no later than July 25, 2025, and required a status report by July 30, 2025, to advise whether a hearing occurred. (*Id.*) Both parties timely filed a status report advising that a hearing occurred, however, Chiguano argued that it was not individualized. (Docs. 14, 16.)

On July 30, 2025, Chiguano filed a second motion to enforce. (Doc. 17.) After full briefing, Chief Judge Bloom issued another report and recommendation wherein he recommendation that the court grant Chiguano's motion to enforce and order a new hearing in federal court. (Docs. 18, 19, 20.) The Government filed objections, which were fully briefed by the parties. (Docs. 21, 22, 23.) On November 14, 2025, this court adopted the report and recommendation in full and scheduled a bond hearing before the undersigned for November 21, 2025. (Docs. 24, 25.)

At the bond hearing, the Government submitted and relied upon the transcript from Chiguano's March 1, 2024 removal proceedings hearing, and the immigration judge's ("IJ") oral decision regarding removal proceedings as

3

evidentiary support.  (Docs. 30–1, 30-2.)  Chiguano also submitted exhibits to support his argument for bond and information regarding his family and where he would reside if granted bond.

### STANDARD OF REVIEW

Chiguano has been detained in immigration custody pursuant to 8 U.S.C. § 1226(c).  (*See* Doc. 1.)  The Due Process Clause requires a hearing "when detention becomes unreasonable" and, at the hearing, "the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute."  *Diop v. ICE/Homeland Security*, 656 F.3d 221, 233 (3d Cir. 2011).  The Government must prove that detention is necessary by clear and convincing evidence.  *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213 (3d Cir. 2020).

The court cannot rely on "mechanistic factors" common to all Section 1226(c) detainees, but rather, the court must find evidence specific to the individual that demonstrates either danger to the community or flight risk.  *Santos v. Lowe*, No. 18-cv-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020).  It is critical to look at "an individualized analysis of the alien's eligibility for parole, present danger to society and willingness to comply with the removal order."  *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 399 (3d Cir. 1999).  Thus, the court must carefully weigh evidence from a Petitioner that tends to show "reform,

rehabilitation, good character, education, employment history and prospects, familial ties to United States citizens, potential for relief from removal, and any other evidence that contravenes danger to the community or risk of flight must be considered, as such evidence is highly relevant to ascertaining the detainee's current risk level." *Guerrero Sanchez v. Sabol*, No. 15-cv-2423, 2016 WL 7426129, at *5 (M.D. Pa. Dec. 23, 2016). "[W]hen assessing danger to the community, the extensiveness, recency, and severity of a detainee's past criminal activity must be considered." *Id.* "[W]hen assessing risk of flight, common-sense considerations include whether the imposition of conditions of release could mitigate flight risk, and whether the detainee has strong family ties to the United States." *Id.* The determination of flight risk or danger must not be focused solely on past conduct and should be "made on a current basis." *Id.*

## DISCUSSION

At the bond hearing, the Government conceded that it cannot prove by clear and convincing evidence that Chiguano is a flight risk. Thus, the court focuses its analysis on whether the Government has proven by clear and convincing evidence that Chiguano is a danger to the community.

The Government argues that Chiguano's past criminal history, which Chiguano testified to during his underlying immigration hearing, is sufficient to prove that he is a danger to the community. While living in Ecuador, Chiguano

5

sustained numerous drug trafficking convictions. At age 13, he was convicted of drug trafficking and served one year and two months. (Doc. 30-1, pp. 15.) In 2009, Chiguano was convicted of drug possession and trafficking and sentenced to eight years in prison. (*Id.* at 16–17.) While incarcerated for the 2009 conviction, Chiguano was convicted of three additional drug trafficking offenses in 2015, 2018, and 2019, and served a total of twelve and a half years. (*Id.* at 16–18.) Chiguano testified that he was forced into drug trafficking by his family and the gangs in Ecuador, including the Choneros and the Lobos gangs. (*See* Doc. 30-1.) He also stated that prison guards and police were involved with the gangs and in drug trafficking. (*Id.*) Chiguano was released from prison in Ecuador on February 26, 2022. (*Id.* at 40.) In June 2022, Chiguano left Ecuador and came to the United States with the mother of his children, who was pregnant, and his three children. (*Id.* at 53–54.)

In the United States, the Government submits that Chiguano's additional criminal activity bolsters its argument that he is a danger to the community. In November 2022, Chiguano was charged with shop lifting in New Jersey. (Doc. 29, p. 49.) He was convicted of "interference with retail/wholesale practices" in January 2023. (*Id.*) Then, in September 2023, Chiguano was charged with simple assault in New Jersey related to a domestic incident. (*Id.* at 47.) This charge was dismissed in February 2025. (*Id.*) Taking all of this together, the Government

submits that it has proven by clear and convincing evidence that Chiguano is a danger to the community as he's been consistently involved in criminal activity since at least 2009.

Chiguano urges the court to determine whether he is a current danger to the community or will be in the future, rather than relying on his past criminal activity. He submits that he credibly testified, perhaps to his detriment, about his drug trafficking past in Ecuador, and left Ecuador to escape drug trafficking, gangs, and for fear of his and his children's lives. (*See* Doc. 30-1.) As to the simple assault charge in the United States, Chiguano states that he has no contact with the alleged victim and has no way to contact her.

Here, the court finds that Chiguano's criminal history is certainly extensive and severe—he accumulated four drug trafficking convictions over a ten-year period, not including a juvenile conviction. However, these convictions are not recent and all occurred prior to his arrival to the United States. Also, Chiguano's stated motivation for leaving Ecuador to flee drug trafficking and gangs, which the IJ found credible, is notable. Since coming to United States, there is no indication that Chiguano has reengaged with drug trafficking. Additionally, Chiguano's only conviction in the United States is for interference with retail/wholesale practices. Although recent, this conviction is neither extensive nor severe.

The Third Circuit has cautioned that "[d]ue process is not satisfied, . . . , by rubberstamp denials based on temporally distant offenses. The process due even to excludable aliens requires an opportunity for an evaluation of the individual's current threat to the community and his risk of flight." *Chi Thon Ngo*, 192 F. 3d at 398. "To presume dangerousness to the community and risk of flight based solely on his past record does not satisfy due process." *Id.* at 398–99. Thus, reliance on Chiguano's past criminal record for drug trafficking to support dangerousness, which is not recent and occurred prior to his entry into the United States, falls short of the due process owed to Chiguano. *See also Luciano-Jimenez v. Doll*, 547 F. Supp. 3d 462, 466 (M.D. Pa. 2021) ("Criminal activity occurring over four years ago cannot be the sole reason for a conclusion that Petition is a current danger to the community."); *Guerrero Sanchez*, 2016 WL 7426129 at *8 (finding that one prior conspiracy conviction was insufficient to prove threat to the community).

## Conclusion

For the reasons stated herein, the court finds that the Government has not met its burden, and the court will grant Chiguano's petition for writ of habeas corpus. An appropriate order will issue.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated: November 25, 2025